Nancy Talnert, Appellant, Plascencia-Alvarado, etc. And then Mr. Ellis, representing Mr. Torres, will have four minutes to address the Court. All right. Let me proceed. And, Your Honors, the only issue I'm planning to address this morning is the issue of whether there's jurisdiction to hear these appeals, and specifically jurisdiction to hear the appeals. I've lost track. I didn't keep my scorecard. You're arguing for whom? For Mr. Plascencia-Alvarado. Got you. Thank you. And, Your Honors, the issue I'd like to address today is the jurisdiction to hear the appeal in my case. And I believe that issue is common to all of our cases as well. But the main thing we would like the Court to understand and convey to the Court is that the reason why there is jurisdiction to hear this appeal is that is explained in the amended opinion in the Pluth decision. That decision explains that a sentence within the applicable range may still be unreasonable, and therefore, it can be imposed in violation of the law. And that is what authorizes jurisdiction under Section 3742A1. Was Pluth a plea bargain sentence where there was the range agreed to in the plea bargain? It was, Your Honor.  And but certainly in this case, we would assert to the Court that there's nothing in the reasoning of the Pluth case and its analysis of Section 3742 that would exclude jurisdiction regarding reasonableness of the sentence in an 11c1c guilty plea. Has there been any case that specifically analyzed that issue in the context of 11c1c plea? Your Honor, some of the cases that are cited by the the prosecutor's brief are from other circuits and do specifically address 11c1c pleas. However, I would note in most of those cases, or possibly all of them, those plea agreements had appeal waivers specifically expressed in them, and that is not the case in this case. Let me ask another question. Suppose we were to say that if the defendant enters a plea agreement and he agrees to a particular sentence, and that's what he gets, he agrees to 60 months and he gets 60 months, that would be presumptively reasonable. However, if there's a range, and there's no discretion by the judge, he just sentenced him for the 60 months that the parties agreed to. But if there's a range, and I think there was a range with two of the defendants, where it was like 20 to 60 months or something, and then the judge exercised the need, has to exercise some discretion and has to consider something, a decision to come up with a number between 20 and 60, then we should probably review for reasonableness of that exercise of discretion. Yes, Your Honor. Certainly, it is the case that in two of the cases, including my client's, the part of the nature of the 11c1c plea agreement was that they were agreeing to make arguments within a specified range, not a specific number. Additionally, the plea agreement had language in it that said, we're specifically agreeing that the judge has, as Your Honor said, the discretion to sentence considering these arguments within that range. So I think, combined with the fact that there was no express appeal waiver, that that even more supports the kind of reasoning in the Plouffe case, that there is no exclusion of 11c1c plea agreement of this type, that that does preserve the right to argue on appeal, the reasonableness of the sentence that was imposed. And, Your Honor, that sort of reasoning is consistent with the language of Section 3742 that discusses the court's jurisdiction regarding review of sentences. There is a reference in subsection c1 to 11c1c pleas, and what it says is that the re are four different subsections under Part A of that statute, and it says that if you do an 11c1c plea, you can't argue under subsection a3 or a4 on appeal about the sentence. But it specifically says, I mean, it's certainly the clear way to read that statute, is that you can still, there still is jurisdiction to bring an appeal under subsection a1 and a2. And that's, again, consistent with what Plouffe said, is that this Court's appellate jurisdiction to review sentences, including to review them for reasonableness, under a1 and a2 survives. So that would certainly be the reasoning to establish jurisdiction here. The idea is that if the sentence is unreasonable, it would be a violation of the law, and therefore, there's jurisdiction under subsection a1. As we've indicated, regarding the plea agreement, in this case, there was no appeal waiver. There was no ‑‑ I'm sorry. Come back. You're saying that in your case, the error would be a3742a2 error? No. Or a1 error? In our case, it would be a1, because we're arguing that the argument is that the sentence, to be reasonable, should have been the low end of the agreed range, and that would be the kind of error that's described in ‑‑ It's unreasonable as a matter of law. Correct, Your Honor. And therefore, under a1. So what the Court would have to do, if it were to accept your analysis, is to first look at whether the sentence was reasonable in order to determine whether it has jurisdiction or not. No, Your Honor. I would reverse that. I think that the first question in any of the Ninth Circuit cases, including Palouf, that have addressed this, have addressed within the applicable range sentences, the first issue is jurisdiction. And our point is, and our position is, that clearly under Palouf and the analysis of 3742 and 11c1c, there is jurisdiction. Once the Court has jurisdiction to hear the appeal, I think the next question would be, was there an appeal waiver. In these cases, there was not an appeal waiver. The defendants were specifically told they had the right to appeal, and that right was preserved in their plea agreements. And then the third issue would be the merits of the reasonableness argument. And I'm not going to address that this morning. I'm going to leave that to our briefs. But certainly there's nothing in Rule 11c1c either that is inconsistent with the analysis we've just described. I'd point out as well that the as the Palouf case does, that the Booker case in retaining the constitutionality of the Federal sentencing guidelines pointed out how important it was to still have the right to appeal sentences for reasonableness, whether they were within or outside the whatever the applicable guidelines might have been. So, Your Honor, because there's ample Ninth Circuit that does provide jurisdiction for reviewing sentences, the reasonableness of sentences within the range, because the facts of this record in the Booker case all would also support jurisdiction to review the sentence here, we would ask the Court to rule that there is jurisdiction and then also reverse the sentence in my client's case. Thank you. May it please the Court. My name is Mary Ann Royal and I represent Adrian Garcia. I would agree with Attorney Towner's analysis of the jurisdiction issue and add only one point, and that is that under 11C1C it talks about the plea can be either to a specific sentence or a sentencing range. And under 3742C it talks about appealing only, the limitations only on appealing a specific sentence, and therefore it doesn't talk, it doesn't address the issue of a sentencing range. And in both mine and Attorney Towner's cases, there was a sentencing range that was proposed. Where does it talk about the specific sentence? In the actual language of 3742C. And 11C1? In the case of a plea agreement that includes a specific sentence. And your argument is that if you include a range, it's not a specific sentence. That's correct, in addition to the other arguments that have been made. I'd like to now turn to the second question in my case, which is the issue of drug quantity in my client's case. The allegation is that there's a material error in the calculation of drug quantity, and that is prejudicial to this defendant in this case. The calculations, the admissions and the indictment both included a quantity of less than 500 grams of cocaine, and the defendant actually admitted to a quantity that was less than 200. In fact, the amount admitted was a question that the district court addressed at sentencing, saying that it was difficult to actually calculate the quantity of drugs, because there was not an understanding as to what the meaning of four balls of cocaine meant, and the actual plea agreement was that he admitted that he conspired to distribute four balls of cocaine, and that was his role in the conspiracy. The dispute was further exacerbated when the plea, the pre-sentence report was prepared, and the probation office attributed the full five kilograms of cocaine that was attributable to the entire conspiracy to this defendant. The defendant objected to counsel, and this was, the objections were carried through in sentencing memorandum and also at the sentencing hearing. The government presented additional evidence at the sentencing hearing based on two wiretap conversations, one that showed that Mr. Garcia had given, had agreed to distribute five, there was a colloquial name that essentially boiled down to five grams, according to defense counsel, and then there was another incident where he had been involved with interfering with a transaction between two other members of the conspiracy, and he was not a party to that conversation. Based on this evidence, the court's decision that the full five kilograms of cocaine that was attributable to the conspiracy was also contributed to my client was incorrect, and there are two ways of looking at this. One way of looking at it is whether this was a sentencing factor or a material fact, and our argument is that it was a material fact, and that the burden of proof applied was beyond reasonable doubt. The additional fact affected punishment, because without this attribution, given the amount that the defendant had admitted to and been allowed to plead to, his maximum sentence would have been within the 21 to 27-month period, based on reviewing the guidelines last night and factoring in the judge's criminal history that she adjusted at sentencing. Therefore, under Blakely, every fact that increases punishment, even if it's within the statutory maximum, is subject to due process protections. However, even if the court considers this an enhancement and follows the cases of Darren Harris, the question is whether the proof that was provided at sentencing given the fact that the PSR was disputed was actually even a preponderance of the evidence, and we would say that it was not, given that there was no testimony introduced from the trial, there was no testimony on the stand at the time saying that, yes, he was a minor player, a major player, there was no testimonies. There was just a conversation between two people that he was a party to that was unsworn, and then his own wiretap admitting to 5 additional grams. So under the evidence that was presented, there was no basis for the court to conclude that he distributed more than 200 grams. If the Court has no questions, that's my argument. Thank you. Good morning, and may it please the Court. My name is Jeff Ellis. I represent Mr. Torres. Mr. Torres is in a different position than the other two defendants. He does not challenge the term of incarceration that he was sentenced to. He bargained for a sentence of 66 months. That's exactly what he got, and he does not appeal that. Instead, he challenges two of the conditions of supervision. And I'd like to address, one, the non-treatment drug test that he was ordered to perform at the discretion of probation. Clearly, under United States v. Stevens, that is error. The real question is whether it is plain error in the sense that we can now show that Mr. Torres is presently prejudiced by the imposition of this condition. And I would respectfully suggest that if the Court looks at this in terms of how can an individual who is currently incarcerated filing a direct appeal from the imposition of this sentence show prejudice, no defendant could ever show prejudice because no defendant could ever really reach out into the future and know what a probation officer would or would not do. So if the requirement of prejudice is to require a defendant to show a present imposition of a condition of probation that will be implemented in the future, no one could ever satisfy that. You'd have to do something more than just speculation. Well, I think really it's more appalling. Would you say yes or no? Can the Court ask the question again? Yes. The question was, but you'd have to show something more than speculation. I would say no. You can show speculation. We can only show speculation. What we can show is that the condition is an error of law. Well, I know. But suppose it's never going to come up. For example, Mr. Torres, by this record, looks like he's going to be deported as soon as his prison term is over. He won't be able to come back legally. And if he comes back illegally, he's waiving his rights. Why isn't this so speculative that we don't get to it? Well, certainly I think the deportation question clouds the issue, in my opinion. But how can any defendant at the time of sentencing ever show prejudice? Because it would always be speculative that the probation officer may or may not impose this condition. If he weren't being deported, you'd have a good argument. It's the deportation problem that's bothersome. I recognize that. But I would respectfully argue that a defendant who is not going to be deported doesn't know whether probation will ever require any drug tests or not. It's always a speculative situation. The real question is whether the court wants to impose a rule that requires probationers to file appeals when the probation officer is tried to enforce what is admittedly an unlawful condition. And I would respectfully suggest that that is both judicially, promotes judicial diseconomy, and secondly, it interrupts the flow of probation, because then you have appeals going on while somebody is on probation. And I... Let me ask you another question. I get your point. Your argument is that this is plain or obvious error because it was a Stevens error. Correct. But the sentence was imposed on August 12, 2005. Stevens was later. Correct. In that time, we'd been following the same law for 20 years, Duff. Two years earlier, we had reinstated Duff as the law. Duff's a pretty good case. Understood. So he reads Duff, and he makes a decision, and we say plain error because in another year, the law is going to change. Is that plain error? Well, there have been subsequent decisions that predate Stevens in terms of the imposition of the sentence that found plain error, albeit unpublished cases, but which likewise found that the defendant couldn't show prejudice. And, again, those are obviously not controlling because they're unpublished. I really can't distinguish our situation from any of those. Unless the Court has any additional questions, I'll reserve the remainder of time for my colleague or rebuttal for my colleagues. Is ripeness also an issue in your case? That is, under the circumstances of the deportation, would ripeness come in, or is that an argument at all that we would worry about? Well, first of all, we don't know that Mr. Torres is going to be deported. There's some contest in the record about whether he's a United States citizen or a Mexican citizen. He claims that he was born in the United States. Certainly, even if he's deported, he could certainly return to the United States, albeit illegally, and be on probation. Okay. Thank you. May it please the Court. My name is John Lilledge, and along with Jim Lord, who's sitting in the gallery, we represent the United States in this matter. The Court's heard a number of arguments today on a number of different issues, so why don't I start with the last issue to discuss the issue regarding Mr. Torres. Your Honor is correct. Right now it's speculative whether or not he's ever going to be submitted for more than three drug tests. He's deported. Unless he comes back to the United States, he's not going to be submitted. When this decision, when the sentence was handed down, Stevens was not decided. And Stevens was a case involving a defendant who had more than three. It wasn't that he might have more than three. It was after the fourth drug test that that case went up on appeal. And what that decision held was that you can't test more than the statutory maximum. And the Ledowski case out of the First Circuit says that if the language in the statute, which provides a test 15 days after release and two additional tests, the Court doesn't add anything else, then it's three tests. And there's no evidence at this point that the probation office or the district court, in light of Stevens, is going to do more than three tests. I'm sorry. So you're saying that it's not ambiguous whether there's three tests or more tests in the language. I'm sorry. I didn't hear you, Your Honor. How do you arrive at the notion that the language used by this judge set the maximum test? The reason I do is that the Court looks at the condition, and that would be standard condition number 7, which is found on page 46 of the excerpt of record. The Court essentially tracked the statute. The Court actually said the defendant shall refrain from any unlawful use of controlled substances. The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic tests thereafter as determined by the Court. In special condition number 3, which is found on the next page of the record, page 47, the Court talks about the, again, cites that to section 3583D. So the Court actually lays out that there are three tests that are going to take place in this matter. Now, if the Court decides at a later date, separate from testing, which is not subject to this appeal, the Court can certainly modify Mr. Torres's conditions and add additional tests, which would comport with Stevens. But as this is written right now, it tells us that Mr. Torres is only to be subject to three tests if he's ever subjected to those tests at all. So you're saying it implies that the language at least implies that if you order that, that you necessarily have to go back to the Court to get a fourth test? Yes, Your Honor. The Court would have to go and modify that. And as I said, the Ledowski case out of the First Circuit actually comes out and says that. Okay. And I'd ask the Court to take that. What's the name of the case? Ledowski. It was on the Court's citation. Ledowski was United States v. Ledowski is at 372 Federal 3rd, 470, and the reference is at page 471. That was a First Circuit case from 2004. In addition, Your Honor talked about the speculative nature. This Court held in Rearden, which was a case dealing with finances, that if it's conjecture, it's the Court does not have to deal with it. It's not something that has to be dealt with today. In that case, what happened was you had a defendant that the Court imposed a $10,000 fine, and the condition of supervised release was that he pay in $300 a month increments. And the defendant said, I can't afford to pay that, but he provided no evidence to the Court of that. And the Court of Appeals said, no, it's speculative that you can't pay that. It's conjecture that you can't pay that. Until you show the Court evidence of that, we don't have an issue here. And I'd argue it's similar in this case. Mr. Torres cannot show that the Court's going to test him more than three times. I'd like to ask you a question. I put myself in the position of this district court judge, and then we say a case that was decided a few months later that shows that he doesn't know what the law is. And that concerns me. He promptly applied Duff, and then after he did it, we changed it to Ground Rules and Stevens. And that's a very persuasive argument to me, except that I don't understand what you do with Johnson v. U.S. Are you familiar with that case? I think I've probably read it in this case. If the Court would remind me, I'd be happy to address it. It's a case by the Supreme Court, and I guess we ought to follow it. The Johnson v. U.S. was a case by the Chief Justice where this issue came up. It said, we agree with the Petitioner on this point and hold the case such as this where the law at the time of the trial was settled and clearly contrary to the law at the time of the appeal, it is enough that an error be plain at the time of appellate consideration. I don't understand at all. So I wondered whether or not you could distinguish Johnson for us. Well, without having read it offhand, I can't do it. But let me see if I understand this. What Judge Peckman did was when she imposed the term of supervised release, she did follow what was in Duff, which at the time was the law of the circuit. When Stevens came around later, it did not say that what she did then was unlawful because that's not what Stevens said. Stevens dealt with a very specific situation where a defendant was tested more than three times. So what you're saying is even if Stevens were decided before the imposition of this condition, that the government still is right on its issue? Yes, I would. If Judge Peckman had put the exact language in today, and I'll tell you today the district court's not doing that, but has she kept in this language as it's set forth in the standard condition, and Stevens had been decided before that, the court could not test more than three times. And I would argue that it's still an accurate, it's not against the law, and it would hold up. But, yeah, the problem with that is that it uses the word at least in the statute, which seems to imply that there could be more. I would say in a vacuum that is correct. But with Stevens out there, it caps it. It's as though the court of appeals has put a limit on that, and the court is going to be bound by that limit now. Well, that's what the First Circuit did. Yes. And that was even on an Anders brief, right? Yes, it was. So it just said we're troubled by this, and we're going to establish a rule in the First Circuit that this means, at least means no more than, unless you specify otherwise. Yes. So that's what the government wanted us to do that in this case? Based on this language, if the court feels uncomfortable with the language of at least, the court can certainly follow Ladowski or cite to Ladowski and say that if the court does not specify more, then it's three tests and only three tests. And that's because we could say because of Stevens, which only allows additional testing if you return to the court. That is correct. I'm curious. Did the First Circuit – was Stevens decided or a similar case decided in the First Circuit before Ladowski? Ladowski, I think, was from 2004. Yes. So it certainly didn't have the benefit of that. All right. Okay. Unless the Court has any other questions on Mr. Torres, I'd like to turn to the other issues raised by counsel. I'm interested in the issue of, although this might also – now, you say Mr. Torres has been deported? No, he has not. He will be deported? That's not clear right now. There is some ambiguity in the record. Mr. Torres claims that he was born here in the United States. The government has disputed that. The probation office did an investigation. They checked the records in Santa Ana, which is where he claims he was born. They found no record of his birth. He has no Social Security number. But we don't know. We don't know. Okay. So let me ask you this question. As to the financial information question, how is it related to the drug trafficking? How is it related to the drug trafficking? I mean, I think the Court's – well, actually, I can point to a case. There's a series of cases cited in our briefs. Brown, which is out of the Second Circuit. Melendez-Sanchez, which is out of the First Circuit. Beller, which is out of the Eighth Circuit. It says that when a defendant is convicted of drug trafficking, the financial conditions are appropriate because it relates directly to the defendant's history, character, and the need to protect the public from future crimes. In fact, there's a correlation between the two. It's a wonderful means for the Court to test it, because Mr. Torres was not engaged in drug trafficking to get a fix. He was engaged there to make money. He did not have much of a legitimate employment. The record shows he worked for somebody that may have worked for – who worked for a nursery. At one point he was a butcher in Mexico, and at one point he worked in a flea market. I would argue that his job was selling drugs. And the quantity of drugs that he sold to Alejandro Delgadillo Uribe was a significant quantity. When you deal with those quantities of drugs, you're getting some profit back. So the Court can put that condition in as a means of determining whether or not Mr. Torres is living beyond his means. If he doesn't have stable employment and he's living the high life or living a life that does not support that means, the Court should look into it. And there's a significant possibility, based on the fact that he was a drug addict, based on the fact that he's already been convicted of drug crime, that he's back in drug trade again. So I'd argue that it was a legitimate decision for the Court to put that in. Unless the Court has any questions, I'd like to move on to the other issues raised by counsel. With respect to – let me start with the jurisdictional issue. Your Honor asked counsel a few minutes ago whether or not there was any cases on point that dealt with 11C1C in jurisdiction. And the context of a range. A range. Because Pacheco-Navarrette, which is our case, was not a range. It was an agreed-upon sentence to specific months. And the Seventh Circuit case begins with a C. Klosky. Klosky. Klosky also is 210 months, a specific number, a specific sentence. I don't happen to have U.S. v. Silva in front of me. I don't recall whether it was a specific number or not. But those are the only three cases that talk about the limitation of jurisdiction for an 11C1C plea agreement. Do you happen to know if Silva was a range or a specific sentence? I think it was a specific sentence. Also specific. I think so. And I think the Calderon case out of the Tenth Circuit was the same. I think it was a range. I probably would have jumped on it. Okay. So my question really is, when – so no one's – we're not bound by any precedent. We're not creating any circuit, interest circuit split. If we were to say that when the judge – when it's a specific sentence, we don't have jurisdiction. But when the judge is called upon to exercise a sentencing discretion because the parties have agreed on a range, we have jurisdiction as to the – at least one and two of 3742. With all due respect, Your Honor, I would disagree. Okay. Tell me why. Here's why. When one walks into an 11C1C plea, what the parties essentially are doing is this. They're saying that we believe that this is the appropriate sentence, be it a range or a specific number. And we believe that is reasonable. And what we do is when we present it to the judge, we're saying, Your Honor, we believe this is reasonable and we are trying to persuade you to accept it. The court then goes through the analysis of looking at the sentencing guidelines, looking at the other factors set forth in 3533B, and determining whether or not she believes that that range or that specific sentence is reasonable. If she says yes, then the parties agree to be bound by a number within that range. They come forward and say that any number within that range is reasonable. If the court says, no, this is not reasonable, it rejects the 11C1C. And we go back to the starting point. And, in fact, in this case, with one of the defendants, Judge Peckman actually did reject the 11C1C. It made us go back to the drawing board a number of times. But she didn't. But she rejected it by rejecting the plea agreement. That's correct. So that's something different than the judge can always reject an 11C1C plea agreement. Yes. But let me ask how you're arguing that. Could I just intervene on Silva? I have Silva. And it seems, looking back over it, that he was, based on stipulated facts, the tentative guideline range contemplated by the plea agreement was 70 to 87 months. So it looks like that one was a range, not a specific number of months. Thank you, Your Honor. I must have been asleep when I read that one. Let me just ask how your argument tracks with the language of the statute, though. Because I understand what you're saying. And it makes logical sense. But the language of the statute, 18 U.S.C.A. 37.2C, says, in the case of a plea agreement that includes a specific sentence, it doesn't say a range. It says a specific sentence. And that was the language that was used in the Ninth Circuit case and in the Seventh Circuit case. Is the ordinary meaning of specific a range, or is it not? I would argue that specific sentence could be a range. Because what you're asking the court to do is to focus on, I guess, a point or a series of points. I mean, the question comes in is, and I guess this was troubling the court, is what is a specific sentence? Does a specific sentence mean it has to be a single number? It says that you have to be sentenced to 120 months as the Pacheco case, Navarrete case did. Or does it mean that you say a specific sentence means any time within this period? The government is treating it as one unit. And we think that makes sense, because that's what the parties are coming forward and asking. They're asking the court to put the sentencing guidelines aside and focus on what they are offering to the court. Now, if they offer a specific sentence, the court considers that. If they offer the court. I'm sorry. Do you think that we shouldn't engage in ordinary statutory construction to determine the meaning of this language and this statute? No. The court could certainly engage in ordinary statutory construction. I would argue, though, that the ordinary meaning could be a range, because, again, you're coming forward with a recommendation to the court. Rule 11C1C talks about pleading to a specific sentence or range. And then the statute talks about a specific sentence. So they've, in the rule and in the statute, they have, in the rule they distinguish between a specific sentence and a range. The Tenth Circuit reads, and Silva seems to read and follow your argument, which says a range is, quote, in effect, a specific sentence. But the trouble I have with that is that if the district court has, if it's a specific number, and I've agreed to a specific number, then the question is whether or not, since I've agreed to that number, but whenever I've agreed to a range, now the district court is going to be exercising some discretionary judgment in that where reasonableness considerations could apply. And if the range is broad enough and has enough effect, then I'm not sure why there shouldn't be some cabining of the district court's discretion under our Plouffe consideration. What if the district court, for example, made a blatant, you know, absent the plea agreement, made a blatantly unreasonable determination of the range? Are you saying that the effect of agreeing to the range waives any appeal, then, of exercise of that discretion within the range? Taking it to that extreme conclusion, Your Honor, I'd say yes. And yet plea agreements have specific waivers of appeal, and this doesn't. So why, construing plea agreements, which are contracts, what's the significance of a difference between a plea agreement that has a specific waiver and one that, as in these cases, agrees to a range, but does not, the government didn't ask for a waiver of appeal on this? I think the difference would be this, Your Honor. With all due respect, I think the appeal waiver is a red herring, because you're not telling the defendant you can't appeal. You can do exactly what Mr. Torres did. You can appeal to that which you don't stipulate to. But what Mr. Garcia did, what Mr. Placencia Alvarado did, is come forward to the court and said all things being considered, this is the amount of time I can live  I can live with any number within this range. I hope to get a number at the bottom, but if you sentence me within this range, I agree, I agree that this is reasonable. Even if you don't, even if you don't like the color of my hair and that's the only reason you do it? Unfortunately, Your Honor, I would say if you take it to that extreme, yes. But that's not what happened in this case. Well, I'm not suggesting it was, because Beckman was careful in it, but nonetheless. I think you're trying to have us hold that we can't even have jurisdiction to review it. Yes, Your Honor. But even if the court said, look, here's what troubles the government. One day you come before the court and say, look, I don't want to – let's focus on Mr. Garcia, a very specific example. Mr. Garcia was part of a conspiracy. He pleaded guilty to conspiring with Cecilio Garcia, his brother, Armando, and talked about dealing with Armando Garcia Villalba. At trial, the Garcia Villalbas had a certain drug amount proven by a jury. They faced 20 years under the guidelines they could have faced a lot more. In addition – and he says, I don't want to take that risk. I'm willing to go within this. And one note I'd actually add is that they both entered their plea agreements after Booker was decided. They both knew that the sentencing guidelines were advisory. I see I've run out of time. May I finish my thought? Oh, please. They both knew that the court was not going to be bound by the guidelines, yet they both went in and said, this is a reasonable period of time. We want to go to that. The difficulty the government is having is 18 months ago, 13 months ago, you walk into a courtroom and say, this is a reasonable sentence. Sentence me within this reasonable range. And today, all these months later, you come back and say, you know, I didn't get what I wanted. That's not reasonable. The government can foreclose that by saying, I waive. You have the clause. You have that zipper clause, the non-zipper clause, the safety clause that says, and you don't get to appeal. You waive your appeal. Use it all the time. Is the court suggesting that here in the Western District of Washington, we should put appellate waivers when we do 11 C1Cs then? No. Well, if that were the rule, you might want to consider it. You also might want to consider negotiating a specific sentence. My problem is your argument makes a lot of sense. You have a contract. You've got to stick, you know, by the contract as long as the judge in exercising her discretion approves of the whole agreement and accepts it. I understand that. I'm just having trouble taking that logic and putting it into, you know, making it consistent with what these statutes say that, of course, I think were all written well before we got into some of these issues of reviewing sentencings post booger. Okay. Thank you, Your Honor. Thank you. If there's any further questions, I'll submit on the remainder of my pleadings. All right. Thank you very much. Thank you. I do have a poll. Are you reserved time? Is this your reserved time? Okay. I'll try to be very quick, Your Honors. First of all, I believe the only cases from the other circuits where there was a range is the Calderon case in that, where that was the agreed sentence. And in that case, there was also an appeal waiver. That was an unusual procedure because the government didn't assert the appeal waiver, and so the court proceeded to address the merits of reasonableness instead. In the Silva case, I believe the stipulation was to a sentence at the bottom of the range, a specific one-number sentence. That's not what it says in the opinion. Well, I apologize, Your Honor. I'll look at it again. It was not quite clear. It says the district court, having accepted his plea agreement, sentenced him to the bottom of the applicable range. And also in that case, Your Honor, the defendant actually received a lower sentence than what he stipulated. But you said it was the only, Calderon was the only case. That's also a Tenth Circuit case. All right. Yes, Your Honor. I'll read the case and figure it out. I'm sorry, Your Honor. I'll just wrap up and agree that I believe the issue is a contract that a range is different than agreeing to a specific number. And we'd ask the court to find jurisdiction on that basis. Thank you, counsel. Thank all counsel. And United States v. Garcia, torus implicantia operati was submitted.
judges: Wallace, Wardlaw, Fisher